**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 30, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TAREK OMAR HASSOUN,

  Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

  Respondent.

No. 11-9558
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

Petitioner Tarek Omar Hassoun, a citizen of Lebanon, petitions for review of a

final order of the Board of Immigration Appeals (BIA) denying his application for

asylum and restriction on removal under the Immigration and Nationality Act (INA),

and request for protection under the United Nations Convention Against Torture

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(CAT).  We have jurisdiction under 8 U.S.C. § 1252(a).  We deny Mr. Hassoun's petition.

I.

Mr. Hassoun entered the United States in 2000, as a nonimmigrant student.  In 2002, he was placed in removal proceedings for failure to comply with the conditions on his nonimmigrant status.  Between 2002 and 2009, Mr. Hassoun's removal proceedings were stalled due to his efforts to obtain an adjustment of status.  But his two marriages to United States citizens that took place during those years both ended in divorce, and his wives withdrew their respective applications filed on his behalf.  Mr. Hassoun eventually filed an application for asylum, restriction on removal, and protection under the CAT.

According to Mr. Hassoun, he feared returning to Lebanon because of two events that transpired *after* he left that country: (1) his conversion to Mormonism; and (2) being perceived as pro-American for allegedly recruiting his cousin to serve in the United States military.

As to his conversion, Mr. Hassoun admitted that it was not a problem to be a Christian in Lebanon, but he would face problems because he converted from being a Muslim to a Christian.  "To come as a Christian to live in Lebanon, it's not a problem.  To convert, to convert from Muslim to a Christian, that's where it [be]comes [] an issue for you."  Admin. R. at 295.  According to Mr. Hassoun, Hezbollah considers it an "honor to kill somebody" who undergoes such a

conversion. *Id*. at 296. He acknowledged that his parents accepted his religious conversion, but he was worried that other relatives might try to harm him. Mr. Hassoun also testified that upon his return to Lebanon, he would be considered "a spy," *id*. at 297, because he had stayed in the United States so long.

As to the second event, Mr. Hassoun testified that his cousin was kidnapped in Lebanon in 2004, because he had served in the United States Marine Corps.[1] He said that because of his cousin's military service, a group "tried to . . . attack [my family], like kill [my family], and actually two people died [in] that attack and it actually was on the CNN. I should have just made copies." *Id*. at 299. But no one in his family was harmed; instead, the two people killed were either the radicals or innocent bystanders. He blamed the attack on a group associated with al Qaeda, that hides in Palestinian refugee camps during the day and sneaks out at night to "attack and kill or do whatever they want." *Id*. Mr. Hassoun said that upon his return to Lebanon, he would be hunted down by radicals because he was "the one who [told his cousin] to [join] the U.S. Marines." *Id*. at 301. He argues that "radical Muslims will believe that he procures Lebanese men and have them enlist in the United States armed forces." Pet'r Opening Br. at 15.

According to Mr. Hassoun, Hezbollah either controls or has access to surveillance tapes at the airport, and that upon his return, he would "either be

---

[1] Another version of the facts that emerged at the hearing was the possibility that Mr. Hassoun's cousin was not kidnapped, but instead deserted the military.

kidnapped [and tortured] and never heard . . . from [] again, or be killed right away." *Id*. at 311. When asked for some examples in Lebanon of harm that had come to Muslims who converted to Christianity, the only incident that Mr. Hassoun could recall concerned a proselytizing nun and two converts who were murdered in the southern part of Lebanon, where radical elements have more influence.

The Immigration Judge (IJ) denied Mr. Hassoun's request for relief. The IJ found that although Mr. Hassoun was credible, his uncorroborated testimony was insufficient to establish a well-founded fear of future persecution or that he would be tortured upon his return to Lebanon. Thus, the IJ concluded that Mr. Hassoun was not eligible for asylum or restriction on removal, or protection under the CAT. The IJ also found that Mr. Hassoun could relocate in northern Lebanon, where the influence of Hezbollah and other radical groups was less profound. The BIA affirmed the IJ's decision.[2]

## II.

To be eligible for a discretionary grant of asylum, Mr. Hassoun had to show that he "suffered past persecution or has a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005)

---

[2] A single member of the BIA affirmed the IJ's decision in a brief order. We therefore review the BIA's decision, as well as those portions of the IJ's decision specifically incorporated by the BIA. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

- 4 -

(footnote omitted) (internal quotation marks omitted). "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." *Id*. (internal quotation marks omitted). "Even without past persecution, [an applicant can] still qualify for asylum by establishing a well-founded fear of future persecution." *Id*. at 1281 (internal quotation marks omitted). "Such a fear must be both subjectively genuine and objectively reasonable." *Id*. Fear of persecution is not well-founded if the applicant can avoid persecution by relocating to another part of the country, and it would be reasonable to expect him to do so. *Id*.

"The showing required for [restriction on] removal is more stringent tha[n] the showing required for asylum." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012). To be eligible for restriction on removal, "an applicant must demonstrate that there is a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion." *Id*. (internal quotation marks omitted). And to be eligible for protection under the CAT, "an individual must establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id*. at 1233-34 (internal quotation marks omitted).

We decide legal questions de novo and look to see if the agency's findings of fact are supported by substantial evidence. *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011). "Under this standard of review, agency findings of fact are

conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted). "In this circuit, the determination whether an alien has demonstrated persecution is a question of fact." *Id.* (ellipses omitted) (internal quotation marks omitted). Moreover, "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4).

III.

In his petition for review, Mr. Hassoun argues that the BIA erred in affirming the IJ's decision because (1) the evidence showed that he had a well-founded fear of future persecution; (2) the IJ should not have required any corroborating evidence; and (3) the evidence showed that he would be tortured upon his return to Lebanon.

## A. *Well-founded fear of future persecution*

The BIA determined that Mr. Hassoun lacked a well-founded fear of future persecution for several reasons, all of which were discussed by the IJ and supported by the evidence of record. "As noted by the [IJ], United States Department of State country and religious freedom reports in the record for Lebanon do not show that the Lebanese government will persecute [Mr. Hassoun] on account of his conversion to the Mormon faith." Admin. R. at 4. Further, the BIA agreed with the IJ "that the record does not support [Mr. Hassoun's] claim that he will be harmed by extremist group or family members on account of his conversion." *Id.* at 5. "[N]o one has

expressed an interest in harming him." *Id*. And although "Hezbollah has the ability to act with impunity in Lebanon, the reports do not provide a reason as to why Hezbollah might seek out individuals like [Mr. Hassoun]." *Id*. As to the issue concerning his cousin, the BIA likewise determined that there was "no evidence in the record [other than Mr. Hassoun's testimony] to show that the Lebanese government had attempted to harm [his] cousin or that any group is interested in harming [Mr. Hassoun] based on the alleged perception," *id*., that he assisted in his cousin's enlistment in the United States military. Last, the BIA agreed with the IJ that Mr. Hassoun "did not show that it would be unreasonable for him to relocate within Lebanon," *id*., to an area where Hezbollah and other radical groups have less influence.[3]

Mr. Hassoun essentially asks this court to reweigh the evidence and determine that he made an adequate showing of a well-founded fear of future persecution. This we cannot do. "It is not our prerogative to reweigh the evidence. . . . We only determine whether a reasonable factfinder could find that [the applicant] did not have a reasonable fear of future persecution. Indeed, we only reverse that finding if a 'reasonable adjudicator would be compelled to conclude to the contrary.'" *Sidabutar*

---

[3]     Mr. Hassoun never addressed his ability to relocate, which would be an independent basis upon which we could affirm the BIA's decision. *See Tulengkey v. Gonzales*, 425 F.3d 1277, 1280 (10th Cir. 2005) (holding that fear of persecution is not well-founded if the applicant can avoid persecution by relocating to another part of the country, and it would be reasonable to expect him to do so).

*v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007) (internal quotation marks omitted). Mr. Hassoun's evidence does not meet this test.

*B. The lack of corroborating evidence*

We acknowledge that an applicant's testimony "may be sufficient to sustain [his] burden [of proof] without corroboration, but only if the applicant satisfies the trier of fact that [his] testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that [he] is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). Moreover, "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain [it]." *Id*.

Mr. Hassoun argued to the BIA that he was never provided the opportunity at his hearing to explain the lack of any corroborating evidence. The BIA rejected this argument, citing several instances in which the IJ asked Mr. Hassoun for corroborating evidence. Admin. R. at 5, n.2. In this court, Mr. Hassoun reprises the same argument and adds for the first time that his failure to provide corroborating evidence was occasioned by the "[inability] to communicate with his family about . . . independent evidence in Lebanon concerning his fear that the Hezbollah would seek him out because his family was also in danger." Pet'r Opening Br. at 28.

On numerous occasions throughout the hearing, the IJ referred to the relevant country reports that were in evidence, and pointed out to Mr. Hassoun that his beliefs

were not supported by those reports. And on just as many occasions, the IJ offered Mr. Hassoun the opportunity to provide any examples of harm that had come to persons in his circumstances in Lebanon. Other than the instance of the proselytizing nun, Mr. Hassoun had no evidence to corroborate his beliefs. As such, there is no merit to the argument that "the IJ failed to give [Mr. Hassoun] an opportunity to provide independent corroborative evidence. . . ." Pet'r Opening Br. at 29. We also reject Mr. Hassoun's argument that he was unable to communicate with his family to obtain any corroborating evidence; instead, the record establishes that Mr. Hassoun was in regular contact with his family throughout his stay in the United States.

Under 8 U.S.C. § 1252(b)(4), which governs the standard of review as to the agency's determination regarding the availability of corroborating evidence, this court cannot reverse the IJ's determination "with respect to the availability of corroborating evidence . . . unless [this] court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." No reasonable trier of fact would be compelled to conclude that corroborating evidence was unavailable to Mr. Hassoun.

## C. Relief under the CAT

The BIA "agree[ed] with the [IJ] that [Mr. Hassoun] has not shown that he faces a sufficient probability of 'torture' by or with the consent or acquiescence of a public official or other person acting in an official capacity for the Lebanese

government to establish his eligibility for protection under the [CAT]." Admin. R. at 5-6.

Mr. Hassoun challenges this conclusion on the basis of an excerpt from a U.S. State Department report on human rights in Lebanon, which states: "The law does not specifically prohibit torture. Security forces abused detainees and in some instances used torture. Human rights groups, including Amnesty International (AI) and Human Rights Watch (HRW), reported that torture was common." *Id.* at 405. This argument overlooks the fact that there was no objective evidence that Mr. Hassoun would be detained by security forces upon his return to Lebanon. Also, Mr. Hassoun provided no evidence that his risks of torture and persecution differ, and he relied on the same evidence to support all of his claims. "Because substantial evidence supports the BIA's finding that it is unlikely [Mr. Hassoun] would face future persecution if returned to [Lebanon], it is likewise against the odds that [he] would be tortured by the government or a proxy for the government." *Ritonga*, 633 F.3d at 979 (internal quotation marks omitted). We affirm the BIA's denial of relief under the CAT.

The petition for review is DENIED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge