**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**August 7, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

BRENDA LISSETH CHAVEZ-
BOLANOS; A.L.A.C., a minor,

    Petitioners,

v.

MERRICK B. GARLAND,
United States Attorney General,

    Respondent.

No. 23-9581
(Petition for Review)

_____

### ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **BACHARACH**, and **CARSON**, Circuit Judges.

_____

Brenda Lisseth Chavez-Bolanos and her minor daughter (collectively,

Petitioners), natives and citizens of El Salvador, entered the United States without

authorization.  Ms. Chavez-Bolanos applied for asylum, withholding of removal, and

protection under the Convention Against Torture (CAT).  She listed her minor

daughter as a derivative applicant on her asylum claim.  After a hearing, the

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

immigration judge (IJ) denied all the requested forms of relief.  The Board of Immigration Appeals (BIA) affirmed the IJ's conclusions and dismissed the appeal.  Proceeding pro se, Petitioners seek review of the BIA's decision.  Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition for review.

I.  Background

Ms. Chavez-Bolanos testified that she lived in the town of Sensuntepeque with her uncle, who was active in providing an armed guard force to their town to help control gang activity.  In January 2016, she received three threatening phone calls from gang members—one to her phone, and then the second and third times she received the threats when she picked up her mother's and uncle's phones.  She testified that in the first call the caller said the gang would "place a bomb in [the] house, and they would do that if [her] uncle did not stop protecting the village where [she] lived."  R. at 85.  In the second call, the caller told her the gang knew where her daughter and sister studied and if her uncle did not stop what he was doing, her daughter and sister would disappear.  In the third call, the caller told her the gang was planning to kill her uncle and that she should help them without telling her uncle.  She explained that the gang was "trying to recruit [her]."  *Id.*  After the threats, she was in the vicinity of a shooting that targeted her uncle, but she was not harmed.

In February 2016, armed individuals shot and killed her uncle at his home.  Ms. Chavez-Bolanos was present when the murder occurred, but she was unharmed.  Afterwards, she left with her sister, her mother, and her daughter and moved to the

2

Salvadoran town of Santa Ana. Ms. Chavez-Bolanos and her daughter remained there unharmed for five months, but then she decided to come to the United States.

Petitioners entered the United States illegally in August 2016. The Department of Homeland Security issued a Notice to Appear (NTA). The IJ then held a hearing on Ms. Chavez-Bolanos's applications for asylum, withholding of removal, and CAT relief.

The IJ found Ms. Chavez-Bolanos credible but concluded she had not shown the necessary harm for past persecution. The IJ also found that, even if the events she described constituted past persecution, Ms. Chavez-Bolanos had not shown a nexus between the persecution and a protected ground. Ms. Chavez-Bolanos argued she was persecuted based on her membership in two particular social groups: 1) Salvadorans who oppose gang activity or oppose gang recruitment and 2) family members of her uncle. The IJ determined these were not cognizable social groups. But the IJ also determined the gang was not motivated to threaten or harm Ms. Chavez-Bolanos because she belonged to a particular group. Rather, the IJ found "the gang clearly just wanted to increase its power and increase its criminal influence and activity." R. at 41. Finally, the IJ found Ms. Chavez had not shown relocation to another part of El Salvador was unreasonable, explaining that she and her daughter had lived unharmed in Santa Ana for five months and her mother and sister have continued to safely reside there since 2016.

Petitioners, proceeding with counsel, appealed the IJ's decision to the BIA. The BIA first rejected Petitioners' argument that jurisdiction never vested with the IJ

3

because the NTA lacked the date and time of the initial hearing.  The BIA explained that a defective NTA does not divest an IJ of jurisdiction.

The BIA then turned to the merits, affirming the IJ's conclusion that Ms. Chavez-Bolanos was not threatened on account of her membership in either of her proposed particular social groups,[1] but rather because the gangs sought to increase their power and criminal influence.  The BIA noted there was record evidence to support this conclusion, "including [Ms. Chavez-Bolanos's] own testimony that gang members attempted to recruit her in an effort to prevent her uncle from providing protection to her town."  R. at 4.  The BIA also affirmed the IJ's conclusion that Ms. Chavez-Bolanos could safely relocate to Santa Ana, El Salvador, noting Ms. Chavez-Bolanos had not meaningfully addressed the issue on appeal and "therefore ha[d] not established error pertaining to internal relocation."  R. at 5.

Because Ms. Chavez-Bolanos "ha[d] not maintained her burden of establishing nexus to a protected ground or that relocation elsewhere in El Salvador would be unreasonable," the BIA determined "she ha[d] not established eligibility for asylum." *Id.*  The BIA also concluded she had waived any issues regarding the IJ's denial of her request for withholding of removal and protection under the CAT by failing to meaningfully challenge the IJ's decision on those issues on appeal.

Petitioners filed a pro se petition for review of the BIA's decision.

---

[1] Because the BIA concluded Ms. Chavez-Bolanos had not met her burden to establish a nexus to a protected ground, it explained that it need not address whether she established a cognizable particular social group.

4

II.  Discussion

We review the BIA's legal conclusions de novo and its factual findings for substantial evidence.  *Miguel-Pena v. Garland*, 94 F.4th 1145, 1153 (10th Cir. 2024).  Under the substantial-evidence standard, "we will not reverse unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* (internal quotation marks omitted).  Because Petitioners are proceeding pro se, we liberally construe their brief, but we "cannot take on the responsibility of serving as [their] attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Petitioners argued for the first time before the BIA that the IJ lacked jurisdiction over the proceedings because of a defective NTA, relying on *Pereira v. Sessions*, 585 U.S. 198 (2018), and *Niz-Chavez v. Garland*, 593 U.S. 155 (2021).[2] They make that same argument here, copying the bulk of the argument they made to the BIA.  *Compare* Pet'rs' Br. at 6-11 *with* R. at 17-21.  In rejecting this argument, the BIA explained it had "recently held that a defective NTA does not divest an [IJ] of jurisdiction, especially where the respondent is served with a subsequent notice providing the date and time of the initial hearing."  R. at 3-4 (citing *Matter of Arambula-Bravo*, 28 I. & N. Dec. 388, 391-92 (B.I.A. 2021)).  And the BIA noted

---

[2] In these cases, the Supreme Court held a defective NTA cannot trigger the stop-time rule for non-citizens seeking relief through cancellation of removal.  *See Niz-Chavez*, 593 U.S. at 158-160, 171-72; *Pereira*, 585 U.S. at 201-02.

that Petitioners had received a Notice of Hearing, which provided the date and time of the initial hearing. The BIA also explained that *Niz-Chavez* "only invalidated this method of curing a defective NTA for purposes of the stop-time rule [for cancellation of removal]." R. at 4. And the BIA further noted that "[t]he only question addressed by *Niz-Chavez*—whether an NTA that is statutorily deficient for purposes of the stop-time rule can be cured by subsequent service of a notice containing the required information—is immaterial to jurisdiction." *Id.* (internal quotation marks omitted). The BIA therefore concluded the IJ had jurisdiction over the proceedings.

Most of Petitioners' argument simply recycles the points they made to the BIA on appeal, so it does not directly challenge the BIA's reasoning. But they do include one new paragraph at the end of the argument section on this issue where they state: "This matter clearly does not just involve the stop-time rule. It is absurd to think the NTA will be valid in this context but not the stop-time rule. If NTA is not valid it is not valid regardless of the context it is in." Pet'rs' Br. at 11. This cursory argument without citation to any legal authority does not show the BIA erred in determining that a defective NTA does not divest the IJ of jurisdiction.

Although 8 U.S.C. § 1229(a)(1)(G)(i) requires that an NTA specify the time and place at which the proceedings will be held, we have explained that "a statutorily defective NTA does not deprive the IJ of jurisdiction because § 1229(a) is a claim-processing rule, not a jurisdiction-conferring requirement." *See Miguel-Pena*, 94 F.4th at 1154. We therefore agree with the BIA that the IJ had jurisdiction over these proceedings.

We next turn to Petitioners' arguments the BIA erred in denying their applications for withholding of removal and CAT relief. The government contends Petitioners failed to raise these arguments to the BIA in their appeal and therefore they failed to exhaust their administrative remedies. We agree. The BIA explained in its decision that Petitioners had not meaningfully challenged the denial of these forms of relief, so the BIA considered any issues related to them waived. *See* R. at 3 n.2.

"A federal circuit court may 'review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right.'" *Miguel-Pena*, 94 F.4th at 1154 (quoting 8 U.S.C. § 1252(d)(1)). "Issue exhaustion is both a statutory command under § 1252(d)(1) and part of the fundamental principle of administrative law that an agency must have the opportunity to rule on a challenger's arguments before the challenger may bring those arguments to court." *Id.* at 1154-55 (internal quotation marks omitted). Issue exhaustion is a mandatory claim-processing rule. *See id.* at 1155. That means when a party timely and properly objects, as the government did here, "[w]e enforce the exhaustion requirement by declining to consider the unexhausted issue." *Id.* Because Petitioners failed to adequately exhaust their arguments challenging the IJ's denial of their requests for withholding of removal and CAT relief, we will not consider them.

Finally, we consider Petitioners' challenge to the BIA's decision upholding the IJ's denial of their application for asylum. "To be eligible for a discretionary grant of asylum by the Attorney General, an alien must first establish she is a refugee."

*Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011). "A refugee is an individual who is outside the country of his or her nationality, and is unable or unwilling to return to that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (ellipsis and internal quotation marks omitted). "A petitioner can establish refugee status by establishing either past persecution or a well-founded fear of future persecution." *Id.* (internal quotation marks omitted).

The BIA upheld the IJ's finding that Ms. Chavez-Bolanos had not shown a nexus between any past persecution and a protected ground because the threats were related to the gangs trying to retain power, not because she was a member of any particular group. Ms. Chavez-Bolanos contends she "was persecuted in El Salvador" and "[t]here was a nexus between the persecution and a protected enumerated group." Pet'rs' Br. at 5. She explains that she and her daughter were both threatened, and her uncle was killed. She further asserts "Petitioner will be harmed if returned to El Salvador," "[t]hat clearly shows the required nexus," and "[t]his is not furtherance of criminal activity." *Id.* But Petitioners fail to cite to the record or to any legal authority to support these conclusory assertions. Accordingly, they have not shown the BIA erred in concluding that Ms. Chavez-Bolanos had not established a nexus between any persecution and her membership in a particular social group.

Regarding a well-founded fear of future persecution, "[a]n asylum applicant, . . . does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality . . .

8

[and] if under all the circumstances it would be reasonable to expect the applicant to do so." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005) (internal quotation marks omitted). The BIA affirmed the IJ's conclusion that Petitioners could relocate internally in El Salvador, noting Ms. Chavez-Bolanos's mother and sister have continued to live unharmed in Santa Ana since 2016. But Petitioners do not address this portion of the BIA's decision in their opening brief. They have therefore waived any challenge to the agency's finding that they could avoid future persecution by relocating within El Salvador. *See Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

III. <u>Conclusion</u>

For the foregoing reasons, we deny the petition for review. We grant Petitioners' motion for leave to proceed without prepayment of costs or fees.

Entered for the Court


Joel M. Carson III
Circuit Judge

9