**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 11, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

KAREN PATRICIA CARCAMO-PEREZ;
JOSUE AREVALO-CARCAMO; EMELY
AREVALO-CARCAMO,

     Petitioners,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 24-9512
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **CARSON**, and **FEDERICO**, Circuit Judges.
_____

Karen Patricia Carcamo-Perez[1] petitions for review of the Board of

Immigration Appeals (BIA) decision affirming the denial of her applications for

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Ms. Carcamo-Perez's minor children, Josue and Emely Arevalo-Carcamo, are derivative beneficiaries of her asylum application. They present no claims or arguments distinct from her arguments.

relief from removal.  Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny her petition for review.

## I.  BACKGROUND

### A.  Underlying Facts

Petitioner is a native and citizen of Honduras who entered the United States without being admitted or paroled in July 2021.  She was then placed in removal proceedings, and the immigration judge (IJ) found her removable.  Seeking relief from removal, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

Before the IJ, Petitioner testified that she and her children's father, Josue Arevalo, lived together in a small town in Yoro, Honduras.  At the end of 2019, Mr. Arevalo left Petitioner and their children alone in Honduras; he came to the United States because the MS-13 and 18th Street gangs had threatened him.

Mr. Arevalo's cousin, Carmelo Santa Maria, is a member of the MS-13 gang. In February 2020, Carmelo began to demand that Petitioner let him hide out at her house.  He threatened to kill Petitioner and her children if she called the police or did not comply.  After Carmelo moved in, Petitioner noticed more foot and car traffic around her home—she feared that people in Yoro knew Carmelo was staying with her.  Over the course of a year and some months, Carmelo came and went from her home several times, threatening to harm Petitioner and her children if she refused to grant him access to her home.  At one point, police arrested Carmelo, but because the MS-13 controlled the area, he was released a day later.

In June 2021, three 18th Street gang members banged on Petitioner's door. They told her that they would kill her and her children if she did not turn Carmelo over to them within a week. Fearing they would follow through on their threats, Petitioner and her children left Honduras a few days later.

Petitioner never sought assistance from the police because she did not believe they would protect her from the gangs. Her father and five siblings live in San Pedro Sula, Honduras, about three hours away from Yoro. Petitioner did not seek refuge with her family because the gangs are everywhere in Honduras, and she feared Carmelo or the 18th Street gang members who threatened her could easily track her down if she remained in the country.

## B.  Legal Standards

To receive asylum, an applicant must be a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is unable or unwilling to return to—and unable or unwilling to avail herself of the protection of—her country because of past persecution or a well-founded fear of persecution *on account of* any of five protected grounds:  race, religion, nationality, membership in a particular social group, or political opinion. *Id.* § 1101(a)(42)(A); *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015).

"Persecution is the infliction of suffering or harm upon those who differ [on protected grounds] in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) (internal quotation marks omitted). An applicant must establish a

3

"nexus" between the past or feared persecution and a protected ground. *Miguel-Pena v. Garland*, 94 F.4th 1145, 1159 (10th Cir.), *cert. denied*, ___ S. Ct. ___, 2024 WL 4743083 (U.S. Nov. 12, 2024) (No. 24-12). Where, as here, an applicant's claim is based on membership in a particular social group, she must show that the group (1) shares "a common, immutable characteristic . . . beyond the power of an individual to change," (2) is defined with "particularity," and (3) is socially distinct, meaning it is "*perceived* as a group by society." *Rodas-Orellana*, 780 F.3d 990–91 (internal quotation marks omitted).

To qualify for withholding of removal, an applicant must show "a clear probability of persecution on account of a protected ground." *Id.* at 987 (internal quotation marks omitted). This burden of proof is higher than the burden for asylum. *Id.* at 986.

To receive protection under the CAT, an applicant must establish that if she is returned to her country, it is more likely than not that she would be tortured, *see* 8 C.F.R. § 1208.16(c)(2), "by, or at the instigation of, or with the consent or acquiescence of, a public official," *id.* § 1208.18(a)(1). Unlike asylum or withholding of removal, a CAT claim does not require the applicant to show a nexus between the harm and a protected ground. *Ritonga*, 633 F.3d at 978.

## C. Agency Proceedings

Petitioner rested her asylum and withholding of removal claims on membership in two proposed social groups (1) family ties to Josue Arevalo in Yoro, Honduras, and (2) single women who exhibit vulnerability due to familial gang

4

membership that makes them and their family a target for similar future harm. The IJ found the harm Petitioner endured in Honduras did not rise to the level of persecution and that Petitioner's proposed social groups were not cognizable because they were not defined with particularity or socially distinct.

The IJ further found that even if Petitioner's proposed groups were cognizable, she failed to show that she was or would be harmed on account of her membership in either group. The facts showed that Carmelo "was not attempting to overcome a protected ground" but instead threatened her to secure refuge in her home because he seemed to be "hiding from other gang members or possibly the police." *Id.* at 55. The IJ also said the facts did not show that the three rival gang members sought to harm Petitioner based on a protected ground; their motivation was to find Carmelo. Therefore, the IJ denied asylum and withholding of removal.

The IJ also denied Petitioner's request for CAT protection, finding she failed to show it was more likely than not that she would be tortured with the acquiescence of government officials upon her removal to Honduras. The IJ reasoned that Petitioner had not endured past torture, her fear of future harm was based on speculation, her father and five siblings remained unharmed in Honduras and had not encountered anyone seeking to find Petitioner, and she had not shown that relocation within Honduras would be unreasonable. The IJ acknowledged country conditions evidence in the record showing Honduras's struggles with corruption and impunity but noted that the evidence also showed the Honduran government was actively working to address those issues.

5

The BIA upheld the IJ's decision. It affirmed the determination that Petitioner was ineligible for asylum and withholding of removal because she failed to meet her burden to establish a nexus between any past or feared future persecution in Honduras and a protected ground. The BIA likewise affirmed the IJ's finding that Petitioner was ineligible for CAT protection because she did not demonstrate it was more likely than not that she would be tortured with the acquiescence of government officials upon her removal to Honduras. Accordingly, the BIA dismissed Petitioner's appeal. She timely petitioned this court for review.

## II. DISCUSSION

### A. Standards of Review

Where, as here, a single BIA member issues a brief order affirming an IJ's decision, we review both the BIA order and any parts of the IJ's decision it relied on. *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). We review legal conclusions de novo and findings of fact for substantial evidence. *Id.* Under the substantial-evidence standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### B. Asylum

Petitioner raises two challenges to the agency's asylum determination—both pertain to the BIA's conclusion that she failed to satisfy the nexus requirement.

To establish a nexus, an asylum applicant must demonstrate that her protected ground "was or will be at least one central reason for" the persecution she suffered or

6

fears. 8 U.S.C. § 1158(b)(1)(B)(i). The protected ground "cannot be incidental, tangential, superficial, or subordinate to another reason for harm," nor can it "play a minor role in the [applicant's] past mistreatment or fears of future mistreatment." *Dallakoti*, 619 F.3d at 1268 (internal quotation marks omitted). "Of course, a persecutor can have multiple motives for targeting someone. . . . But even when the protected ground is intertwined with unprotected reasons, the protected ground must still be a central reason." *Orellana-Recinos v. Garland*, 993 F.3d 851, 855 (10th Cir. 2021) (internal quotation marks omitted).

First, Petitioner argues the BIA "limited itself to the perceived most central reason" and therefore applied a more stringent standard than the "one central reason" standard. Opening Br. at 15. In support, she asserts the BIA prematurely ended its nexus analysis when it found Carmelo and the gang members were motivated by unprotected reasons and failed to consider whether her protected grounds also motived them to target her. "Whether the BIA applied the correct legal framework is a question of law, which we review de novo." *Miguel-Pena*, 94 F.4th at 1159. Here, the BIA considered the possibility that Carmelo and the gang members had mixed motives but ultimately upheld the IJ's conclusion that the evidence did not establish that they sought to harm Petitioner on account of a protected ground at all. The BIA applied the appropriate nexus standard.

Second, Petitioner argues that the record compels the conclusion that she was persecuted on account of her proposed protected grounds. "Whether an applicant was persecuted on account of a protected ground is a question of fact that we review for

substantial evidence." *Miguel-Pena*, 94 F.4th at 1159 (internal quotation marks omitted).[2]  Thus, for us to reverse the BIA, the record must show that any reasonable adjudicator would be compelled to conclude that one of the central reasons Carmelo and the three 18th Street gang members targeted Petitioner was because of her family ties to Josue Arevalo in Yoro, Honduras, or her membership in the group of single women who exhibit vulnerability due to familial gang membership that makes them and their family a target for similar future harm.

Even assuming, as the BIA did, that Petitioner's proffered social groups are cognizable, the record does not contain the compelling evidence required to overturn the BIA's nexus determination.  As the BIA observed, Petitioner herself testified that Carmelo threatened her "because he was attempting to hide from other gang members and/or the police, and that when members of the 18th Street gang threatened her it was because they were looking for [Carmelo] and believed that [Petitioner] knew his whereabouts."  R. vol. I at 4.  And nothing in the record compels the conclusion that either of Petitioner's protected grounds "was or will be *at least one central reason*

---

[2] Petitioner argues that whether she satisfied the nexus requirement is a mixed question of law and fact, and under *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225 (2020), such questions present "questions of law."  She therefore urges us to conduct a bifurcated review of the BIA's nexus determination in which we would afford deference to the BIA's factual findings and then review de novo whether the BIA correctly applied the law to the facts.  But *Guerrero-Lasprilla*'s holding concerned review of mixed questions for purposes of 8 U.S.C. § 1252(a)(2)(D)'s jurisdictional bar, and the Court expressly declined to answer what its jurisdictional holding means for "the proper standard for appellate review of [an] . . . agency decision that applies a legal standard to underlying facts."  *Guerrero-Lasprilla*, 589 U.S. at 228.  Given the uniquely jurisdictional concerns animating *Guerrero-Lasprilla*, we decline to treat its analysis as dispositive with respect to our standard of review here.

for" Carmelo or the 18th Street gang members to persecute her. 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added); *see Niang v. Gonzales*, 422 F.3d 1187, 1200 (10th Cir. 2005) (concluding that an applicant's protected ground "must be central to the persecutor's decision to act against" her).

## C. Withholding of Removal

Petitioner's failure to satisfy the burden of proof for asylum necessarily precludes her from meeting the higher standard for withholding of removal. *Rodas-Orellana*, 780 F.3d at 987.

## D. The Convention Against Torture

Petitioner argues that the agency "failed to give considered review" to her CAT claim. Opening Br. at 25. She asserts the agency's CAT analysis did not contextualize country conditions evidence with her credible testimony about her lived experience in Honduras. We reject this argument. The IJ analyzed the evidence and fully explained her reasons for denying Petitioner's request for protection under the CAT. The BIA agreed with and adopted the IJ's analysis. Having carefully reviewed Petitioner's argument, we discern no reversible error.

### III.  CONCLUSION

We deny the petition for review.

Entered for the Court

Joel M. Carson III
Circuit Judge

9