FILED
United States Court of Appeals
Tenth Circuit

July 24, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SHEKHROZ MUKUMOV,

      Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

      Respondent.

No. 18-9569
(Petition for Review)

_____

**ORDER AND JUDGMENT**<sup>*</sup>
_____

Before **LUCERO**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

Shekhroz Mukumov, a native of Uzbekistan, petitions for review of an order

by the Board of Immigration Appeals (BIA) affirming a decision by the Immigration

Judge (IJ) denying his application for asylum, withholding of removal, and protection

under the Convention Against Torture (CAT). Exercising jurisdiction under 8 U.S.C.

§ 1252(a), we deny the petition for review.

---

    <sup>*</sup> After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## BACKGROUND

In September 2017, thirty-year-old Mukumov, along with his wife and two children, entered the United States without valid entry documents. Upon arrival, he expressed a fear of returning to his homeland of Uzbekistan based on threats from his former employer, the wealthy owner of a construction company.

In May 2017, Mukumov was overseeing the delivery and inventory of materials necessary for the construction of a residential building, when he noticed that materials documented as delivered were missing from the warehouse. He raised the issue with the construction site manager, who denied knowledge of the missing materials, as well as the owner of the company, who told him to focus on his job and not to bother him. Mukumov resumed working, believing he would eventually receive the materials, but when they didn't arrive, he again approached his employer and expressed concerns about the structural integrity of the building. His boss again told him to mind his own business and focus on his work.

In June 2017, a government inspection committee visited the building site to ensure compliance with construction standards. Mukumov relayed to the committee his concerns about the structural integrity of the building due to the missing materials. The following day, Mukumov's employer fired him for talking to the committee and said that because the committee learned of the missing materials, Mukumov would have to pay for them. Mukumov then began receiving threatening telephone calls in which the callers, associates of his former employer, demanded he pay $70,000 to cover the materials or else they would harm him and his family.

2

Thereafter, Mukumov was confronted outside a store by two men who forced him into a car and took him to a train station, where they beat him. The assailants said he owed money to his former employer and should not have insulted such a "respectful person." R., Vol. 1 at 103 (internal quotation marks omitted). Mukumov later sought treatment at a clinic, where he received medications and was sent home.

Mukumov reported the incident to the police, but they said they were unable to help because his former employer was a "strong" member of the community. *Id.* (internal quotation marks omitted). They also said the prosecutor's office told them to destroy the complaint.

Shortly after his meeting with law enforcement, unknown associates of his former employer tried unsuccessfully to kidnap Mukumov's children from their daycare center. The men pretended to be relatives of the children but left when a teacher called the children's parents. Approximately two weeks later, Mukumov, along with his wife and children, left Uzbekistan and traveled to the United States.

The IJ generally found Mukumov to be credible but denied his application for asylum, withholding of removal, and protection under the CAT. Mukumov appealed to the BIA, which affirmed the denial of relief. We denied his request for a stay of removal pending our review of his petition.

## DISCUSSION

### I. Standard of Review

Because the BIA affirmed the IJ in a brief order issued by a single judge, "we review the BIA's decision as the final agency determination and limit our review to

3

issues specifically addressed therein." *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

"We review the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard," whereby the findings "are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005) (internal quotation marks omitted). Although the BIA can't "ignore or misconstrue evidence," *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013) (internal quotation marks omitted), neither is it "required to discuss every piece of evidence." *Hadjimehdigholi v. INS*, 49 F.3d 642, 648 n.2 (10th Cir. 1995). Our review, in turn, doesn't allow "reweigh[ing] the evidence." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1125 (10th Cir. 2007) (internal quotation marks omitted).

## II. Asylum

To be eligible for asylum, Mukumov must prove he is a refugee, which requires demonstrating he "is unable or unwilling to return to" Uzbekistan "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Mukumov can establish refugee status by showing he "(1) has a well-founded fear of future persecution, (2) has suffered past persecution, which gives rise to a rebuttable presumption of a well-founded fear of future persecution, or

(3) has suffered past persecution so severe as to demonstrate compelling reasons for being unwilling or unable to return to his country of nationality." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004) (internal quotation marks, citations, and alterations omitted). Mukumov also must show that a protected ground—"race, religion, nationality, membership in a particular social group, or political opinion," § 1101(a)(42)(A)—is a "central reason" behind his persecution and not merely "incidental, tangential, superficial, or subordinate to another reason." *Karki*, 715 F.3d at 800–01 (internal quotation marks omitted).

Although not defined in the statute, "persecution" (1) requires "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive"; (2) "must entail more than just restrictions or threats to life and liberty"; (3) may be based upon "the cumulative effects of multiple incidents," even though each individual incident, when assessed in isolation, may not rise to the level of persecution; and (4) "may be inflicted by the government itself[] or by a non-governmental group that the government is unwilling or unable to control." *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) (internal quotation marks omitted). "[W]hether an alien has demonstrated persecution is a question of fact," subject to the substantial-evidence standard, "even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (internal quotation marks omitted). As such, we may reverse the BIA's finding that Mukumov failed to demonstrate persecution only if we are

5

"*compelled* to conclude to the contrary." *Niang*, 422 F.3d at 1196 (emphasis added) (internal quotation marks omitted).

## A. Past Persecution

Here, Mukumov alleged persecution based upon the threatening phone calls, his kidnapping and beating, and the attempted kidnapping of his children. Although the IJ found Mukumov "generally credible," R., Vol. 1 at 104, both the IJ and the BIA found his experiences didn't rise to the level of persecution, particularly when compared to the factual circumstances of other decisions from this court. *See id.* at 3 (citing, *inter alia*, *Kapcia v. INS*, 944 F.2d 702, 704–05, 708 (10th Cir. 1991), in which we upheld the BIA's finding of no persecution for two aliens, where: (1) the first alien's parents' home had been searched and the alien had been harassed at work, conscripted into the army, and detained twice for two-day periods, during which he was interrogated and beaten; and (2) the second alien had his own home searched and was harassed at work, arrested four times, detained three times, and beaten once). We agree.

First, the BIA correctly found that the threatening phone calls didn't rise to the level of persecution. *See id.* (citing *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003), in which we noted threats alone generally don't qualify as persecution). Although Mukumov's boss didn't stop at mere threats, the medical report following Mukumov's assault doesn't support his assertion that he "suffered serious damage to his kidneys as a result of the beatings which he sustained." Aplt. Opening Br. at 14; *see also id.* at 15 (stating "the beating resulted in kidney infection

6

which had to be treated with antibiotics"). The report doesn't mention an assault, let alone a causal connection to the injuries for which he sought treatment. The report indicates that although Mukumov complained of "low back pain" and "general weakness," his "general condition [wa]s relatively satisfactory," with normal breathing, painless urination, and a painless abdomen. R., Vol. 2 at 524. After being diagnosed with a chronic kidney infection in the acute stage and gastritis, Mukumov was prescribed antibiotics and sent home.

The medical report thus supports the BIA's finding that Mukumov "did not suffer great injury" during the "one occasion" when he was assaulted, R., Vol. 1 at 2, and that this incident doesn't rise to the level of persecution. *See Ritonga*, 633 F.3d at 976 (upholding finding of no persecution when alien was threatened and suffered minor injuries during a home invasion); *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009) (holding assaults didn't amount to persecution when they didn't "requir[e] medical attention"); *Sidabutar*, 503 F.3d at 1124 (upholding finding of no persecution when alien "suffered repeated robberies and some minor injuries," as distinguished from the "severe beating and ten month imprisonment" amounting to persecution in *Nazaraghaie v. INS*, 102 F.3d 460, 463–64 (10th Cir. 1996)).

Finally, Mukumov cites the attempted kidnapping of his children from their day care as a basis for his claim of persecution. But the attempted kidnapping, even when combined with the telephone threats and the assault, doesn't "compel[]" a finding of persecution. *Niang*, 422 F.3d at 1196 (internal quotation marks omitted). The IJ noted that "[n]o one was harmed on this occasion," R., Vol. 1 at 105, and the

7

record contains no indication that either Mukumov or the day care teacher who intervened reported the incident to law enforcement. "[W]hile we do not gainsay the significance of this incident," *Witjaksono*, 573 F.3d at 977, "[p]ersecution is an *extreme* concept that does not include every sort of treatment our society regards as offensive." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012) (emphasis added) (internal quotation marks omitted).

## B. Well-Founded Fear of Future Persecution

"Even without past persecution, [Mukumov] could still qualify for asylum by establishing a well-founded fear of future persecution." *Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005) (internal quotation marks omitted). "For a fear of future persecution to be well-founded, it must be both subjectively genuine and objectively reasonable." *Ritonga*, 633 F.3d at 976 (internal quotation marks omitted). Here, the IJ found that Mukumov "met the subjective prong" but that his "fear [was] not objectively reasonable." R., Vol. 1 at 107. The BIA found no clear error in the IJ's assessment, and we are not "compelled to conclude" otherwise. *Niang*, 422 F.3d at 1196 (internal quotation marks omitted).

First, in addition to finding that Mukumov's mistreatment didn't rise to the level of persecution, the IJ also found that Mukumov's family members, including his parents and sibling, have continued to live in Uzbekistan without being harmed—indeed, in the same city Mukumov left and in which his former boss operates. As such, the objective reasonableness of Mukumov's fear—particularly to the extent he asserted persecution on the basis of his family as a "particular social group" – "is

8

undermined by the fact that most of [his] family remains in [Uzbekistan] unharmed."
*Ritonga*, 633 F.3d at 977 (internal quotation marks omitted).

Additionally, "[f]ear of persecution is not well-founded if the applicant can avoid persecution by relocating to another part of the country and it would be reasonable to expect [him] to do so." *Id.* at 976–77; *see also* 8 C.F.R. § 1208.13(b)(2)(ii) (articulating this standard). Here, the BIA agreed with the IJ that Mukumov "did not show that he cannot reasonably relocate within Uzbekistan." R., Vol. 1 at 3. In particular, the IJ found that Mukumov "has not attempted to live elsewhere in Uzbekistan" and that his "young age, relatively good health, and varied employment history make relocation practically reasonable." *Id.* at 107. Although Mukumov asserted he would not be safe elsewhere in Uzbekistan because his former boss "is a nationally powerful businessman," Mukumov offered "no documentary evidence to support this assertion," and "information about a prominent businessman" would [have] be[en] reasonably available." *Id.*

### C. Nexus and Protected Ground

The IJ and the BIA further found Mukumov failed to demonstrate persecution on the basis of any of the protected grounds, to wit, "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Whether there exists a nexus between the alleged persecution and a protected ground depends on the persecutor's motive in mistreating the alien. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).

9

Mukumov alleged in his asylum application persecution on the basis of a particular social group, *i.e.*, his family, and also on the basis of political opinion. On appeal, Mukumov contends the IJ and the BIA ignored his claim for asylum based on political opinion, which he contends was "inherent in [his] whistleblowing" against his employer. Aplt. Opening Br. at 19. But he doesn't argue in his brief that the IJ or the BIA erred in rejecting his claim of persecution based on a particular social group. Thus, he has abandoned this issue. *See Rodas-Orellana v. Holder*, 780 F.3d 982, 985 n.1 (10th Cir. 2015).

As for persecution on the basis of political opinion, Mukumov didn't explicitly argue this basis to the IJ, and when asked on cross-examination, he denied "ever [being] harmed for expressing [his] political opinion." R., Vol. 1 at 199. Regardless, the BIA properly found Mukumov had not "been mistreated on account of a protected ground." *Id.* at 3. Rather, Mukumov "was targeted by his former employer, a private citizen, because of a personal vendetta after [Mukumov] complained to government officials about the fraudulent activities that were occurring at [Mukumov's] worksite." *Id.* As such, Mukumov failed to demonstrate the threats and violence were animated by a protected ground so as "to distinguish them from acts of common criminality or personal hostility that do not implicate asylum eligibility." *Vatulev*, 354 F.3d at 1209 (noting some of the acts against the alien and her family, including the kidnapping of her son and mugging of her husband, were based upon "financial extortion"); *see also Hayrapetyan*, 534 F.3d at 1337 (finding "no basis for asylum" when retaliation is "carried out by mere civilians motivated by personal vengeance").

10

To the extent any protected grounds were implicated, they were "incidental, tangential, superficial, or subordinate to" his employer's personal vendetta against Mukumov. *Karki*, 715 F.3d at 800–01 (internal quotation marks omitted). Accordingly, the record doesn't compel a finding that Mukumov's mistreatment was based on a protected ground under 8 U.S.C. § 1101(a)(42)(A).

## III.  Withholding of Removal

"The showing required for withholding of removal is more stringent tha[n] the showing required for asylum." *Zhi Wei Pang*, 665 F.3d at 1233. Specifically, Mukumov needed to "demonstrate that there is a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (internal quotation marks omitted). "Failure to meet the burden of proof for an asylum claim necessarily forecloses meeting the burden for a withholding claim." *Rodas-Orellana*, 780 F.3d at 987. Therefore, the BIA properly found Mukumov could not establish eligibility for withholding of removal.

## IV.  CAT Protection

Lastly, Mukumov sought relief from removal under the CAT, which required him to "prove it is more likely than not that he . . . would be tortured if removed to a particular country." *Hayrapetyan*, 534 F.3d at 1336 (internal quotation marks omitted). The CAT defines "torture" as the "intention[al] inflict[ion]" of "severe pain or suffering, whether physical or mental, . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official

11

capacity." 8 C.F.R. § 1208.18(a)(1). The record doesn't compel a finding that Mukumov carried his burden under the CAT.

As the BIA properly found, Mukumov "has never been tortured in Uzbekistan." R., Vol. 1 at 4. The IJ elaborated: "Although he was beaten on one occasion, the conduct was not so severe as to constitute torture; [Mukumov's] medical report after the incident makes no[] reference to bodily injuries resulting from a beating." *Id.* at 108. Echoing his finding regarding Mukumov's alleged fear of future persecution, the IJ also found Mukumov "could reasonably avoid the harm he fears by relocating to another part of Uzbekistan," which would "significantly diminish[] the chance of his future torture." *Id.* In particular, the evidence indicated that Mukumov "has little to no recognition outside his community, as he has spent most of his life in Samarkand," and that he is afraid only of his former employer, not any "public officials or any other national entity such that he would be at risk anywhere within Uzbekistan." *Id.*

Mukumov fails to identify any error in the factual findings below. Instead, he contends that "the Uzbek government will immediately realize that he sought asylum in the US," that "known asylum seekers are detained and tortured in Uzbekistan," and "that the treatment he will suffer based on his political opinion may include arbitrary arrests on fabricated charges, beatings and other forms of physical attacks and mistreatment in police detention." Aplt. Opening Br. at 29–30; *see also id.* at 5, 11. Although the documentation he submitted contained anecdotal information on the

12

detention and torture of political dissidents, Mukumov doesn't identify any references in that documentation to consequences for "known asylum seekers."

Moreover, contrary to his assertion that the documentation he submitted was "overlooked," *id.* at 5, the IJ specifically noted Mukumov submitted evidence of "widespread corruption" and "problems with the Uzbek government." R., Vol. 1 at 108–09. But the IJ also properly found Mukumov "failed to establish that he, individually, would be targeted by Uzbek public officials," particularly given that he had "never been detained by the authorities or directly harmed by police officers." *Id.* at 109. The IJ further found no evidence "that the police [would] acquiesce in his torture at the behest of a construction company executive." *Id.* (emphasis omitted).

Because Mukumov presented no evidence of "inevitable impending torture" in the event of his return to Uzbekistan, Aplt. Opening Br. at 5, the evidence doesn't compel a conclusion that the government of Uzbekistan would instigate or acquiesce in any torture of Mukumov upon his return to Uzbekistan. *See Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005).

## CONCLUSION

For the above reasons, we deny Mukumov's petition for review.

Entered for the Court

Nancy L. Moritz
Circuit Judge

13