**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CRISOFORO HERNANDEZ, a/k/a
Crisoforo Alejandro Hernandez, a/k/a Chris
Alex Hernandez,

     Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

     Respondent.

No. 19-9522
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Crisoforo Hernandez, a Mexican national, seeks review of a Board of Immigration

Appeals ("BIA") decision affirming the denial of cancellation of removal, restriction on

removal, and relief under the Convention Against Torture ("CAT").  Exercising

jurisdiction under 8 U.S.C. § 1252(a), we deny his petition for review.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I

Hernandez entered the United States as a child in 1977 and has remained here ever since. In 2015, the Department of Homeland Security issued him a Notice to Appear in removal proceedings, alleging he entered this country without lawful admission or parole. See 8 U.S.C. § 1182(a)(6)(A)(i). An immigration judge ("IJ") sustained the charge, and Hernandez applied for cancellation of removal, restriction on removal, and relief under CAT. In response to his application for cancellation of removal, the government submitted evidence that Hernandez has been convicted of numerous criminal offenses, including twice providing false information to peace officers in violation of Utah Code Ann. § 76-8-507. The IJ determined the Utah convictions were crimes involving moral turpitude ("CIMT"), rendering him ineligible for cancellation of removal. See 8 U.S.C. §§ 1229b(b)(1)(C), 1182(a)(2)(A)(i)(I).

As for his applications for restriction on removal and CAT protection, Hernandez testified that he did not want to return to Mexico because, "I don't have nothing there, not even my parents; nothing." He added that there was "[t]oo much crime, and if I go back maybe they might think I have money and I really don't." When asked who would target him, Hernandez replied, "Most of the people. They're out there trying to get money, easy money[.]" He testified that the cartels and "[a] lot of people" would target him because he had a different accent and had been in the United States for some forty years, which would make them believe—incorrectly—that he had money. Hernandez also stated that people "might kill me, beat me up to dea[th], or cripple me." He explained that a friend who had been removed from the United States was "grabbed by . . . people . . . [that]

2

need money" and held for ransom in a cave for four days. Based on this testimony, Hernandez claimed he faced a likelihood of persecution as a member of a particular social group he described as "Mexican men who have been deported who are portrayed to be wealthy because they come from America."

The IJ rejected this theory and ordered Hernandez removed because his fears of general conditions of danger and lawlessness in Mexico were insufficient to establish a clear probability of persecution. He had also failed to articulate a cognizable social group and thus was not entitled to restriction on removal. Finally, the IJ ruled that Hernandez was not entitled to CAT relief because he failed to show a likelihood that he would be tortured in Mexico.

The BIA affirmed. It agreed that Hernandez's convictions under § 76-8-507 were CIMTs that rendered him ineligible for cancellation of removal and that Hernandez failed to show a clear probability of persecution. Further, he was not entitled to CAT protection because he failed to show a likelihood that he would be tortured by or with the acquiescence of the Mexican government.

## II

We first consider the BIA's conclusion that Hernandez is ineligible for cancellation of removal because he has been convicted of CIMTs. We review de novo whether Hernandez's crimes are disqualifying CIMTs for purposes of cancellation of removal. See Flores-Molina v. Sessions, 850 F.3d 1150, 1157 (10th Cir. 2017). Hernandez bears the burden of establishing eligibility for any requested relief, including

3

"the absence of any impediment to discretionary relief," such as a CIMT. Garcia v.

Holder, 584 F.3d 1288, 1289-90 (10th Cir. 2009) (quotation omitted).

Hernandez argues that the BIA erred because it did not specify which section of

the statute it determined to be a CIMT. He asks us to grant his petition for review so that

the agency can clarify the basis for its decision. But the BIA did specify the statute—

§ 76-8-507—and Hernandez does not argue that he was not convicted under § 76-8-507.

Moreover, the BIA's failure to refer to the specific subsection of § 76-8-507 it was

analyzing does not merit granting his petition. Its conclusion that Hernandez's

convictions were CIMTs depended on its determination that § 76-8-507 required an intent

to mislead a peace officer. Both subsections of § 76-8-507 require such an intent.[1] It is

therefore irrelevant that the BIA did not analyze the two subsections separately.

Further, Hernandez could have contested the BIA's determination that under

Flores-Molina, 850 F.3d at 1150, and Afamasaga v. Sessions, 884 F.3d 1286 (10th Cir.

---

[1] Section 76-8-507 provides:

(1)     A person commits a class C misdemeanor if, with intent of misleading a peace officer as to the person's identity, birth date, or place of residence, the person knowingly gives a false name, birth date, or address to a peace officer in the lawful discharge of the peace officer's official duties.

(2)     A person commits a class A misdemeanor if, with the intent of leading a peace officer to believe that the person is another actual person, he gives the name, birth date, or address of another person to a peace officer acting in the lawful discharge of the peace officer's official duties.

Id. (emphasis added). The record indicates that one of Hernandez's convictions was under the first subsection and it strongly suggests, but does not confirm, that his second conviction also was.

2018), § 76-8-507 was a CIMT.[2]  He failed to do so, instead focusing his appellate argument on the BIA's failure to separate its analysis of §§ 76-8-507(1) and (2) and on the other requirements for cancellation of removal.  The two sentences in his brief addressing the BIA's determination are conclusory and fail to set forth any reasons for which § 76-8-507 is not a CIMT.  We decline to address this argument.  See Murphy v. City of Tulsa, 950 F.3d 641, 651 n.14 (10th Cir. 2019) ("We decline to consider arguments that are inadequately presented in an appellant's opening brief." (quotation and alteration omitted)).  Because Hernandez has set forth no grounds on which to conclude that the BIA erred in its CIMT determination, we do not address his arguments regarding the other statutory requirements for cancellation of removal.

## III

We turn to the agency's denial of restriction on removal.  We review legal issues de novo and agency factual findings for substantial evidence.  Ritonga v. Holder, 633 F.3d 971, 974 (10th Cir. 2011).  "Agency findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  Vladimirov v. Lynch, 805 F.3d 955, 960 (10th Cir. 2015) (quotation omitted).

To be eligible for restriction on removal, an applicant "must establish a clear probability of persecution in [the country proposed for removal] on the basis of race, religion, nationality, membership in a particular social group, or political opinion."

---

[2] We note that although the BIA relied on our precedent in concluding that the intent to mislead distinguishes § 76-8-507 from the statute held not to be a CIMT in Flores-Molina, we have not yet addressed this issue.  For the reasons discussed above, we decline to do so in this case.

5

Matumona v. Barr, 945 F.3d 1294, 1304 (10th Cir. 2019) (quotation omitted). He or she must demonstrate "either past persecution . . . or that it is more likely than not that he or she would be persecuted on one of the specified grounds upon returning." Ritonga, 633 F.3d at 978 (quotation omitted).

Hernandez contends he faces a clear probability of persecution in Mexico on account of his membership in a particular social group, which he describes as "Mexican men who have been deported who are portrayed to be wealthy because they come from America." He argues that he could be abducted, beaten, and even killed because he would be targeted "for his perceived wealth and his cultural, political, and personal connections with the United States."

In affirming the denial of restriction on removal, the BIA adopted the IJ's rationale and ruled that Hernandez failed to establish membership in a particular social group and that "fleeing general conditions of violence" was insufficient to obtain relief. Because the BIA expressly incorporated the IJ's rationale, we may consult the IJ's decision to better understand the grounds provided by the BIA. See Sidabutar v. Gonzales, 503 F.3d 1116, 1123 (10th Cir. 2007). The IJ determined that Hernandez failed to establish a clear probability of persecution and failed to articulate a cognizable social group.[3]

---

[3] Additionally, the IJ ruled that Hernandez neither established a nexus between any claimed harm and his proposed social group, nor demonstrated that any harm would be inflicted by the Mexican government or a non-government group the government was unable or unwilling to control. Because Hernandez only sporadically refers to these issues without any developed argument, we decline to consider them. See Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007).

6

**A**

The IJ first determined that Hernandez failed to show a clear probability of persecution. Although Hernandez fears being targeted by cartels and others who might perceive him as being wealthy, the IJ acknowledged evidence that Americans generally face danger in Mexico, including extortion, kidnapping, and other violent crime. Given that there were no current threats against Hernandez, the IJ concluded that he feared only general violence and lawlessness, which did not meet his burden of showing a clear probability that his life or freedom would be threatened.

There is ample support for the IJ's decision. "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." Ritonga, 633 F.3d at 975 (quotation omitted). General lawlessness and acts of common criminality do not establish persecution. See Maatougui v. Holder, 738 F.3d 1230, 1241 (10th Cir. 2013); Vatulev v. Ashcroft, 354 F.3d 1207, 1209 (10th Cir. 2003). Yet Hernandez's claim relies almost entirely on general conditions of lawlessness and crime in Mexico. He expressly testified there was "[t]oo much crime, and if I go back maybe they might think I have money and I really don't." He further indicated that "[m]ost of the people" would target him because "[t]hey're out there trying to get money, easy money[.]" And although he testified that his friend was held for ransom in a cave, the IJ noted there were no threats against Hernandez, and the BIA recognized that he "was never harmed in Mexico." This evidence fails to show a clear probability of persecution upon removal.

7

**B**

The IJ also determined Hernandez failed to demonstrate he is a member of a cognizable social group.[4] "What constitutes a particular social group is a pure question of law that we review de novo." Cruz-Funez v. Gonzales, 406 F.3d 1187, 1191 (10th Cir. 2005). A "particular social group" is "a group of persons all of whom share a common, immutable characteristic such as sex, color, or kinship ties." Rodas-Orellana v. Holder, 780 F.3d 982, 990 (10th Cir. 2015) (alteration and quotation omitted). The group must be defined with "particularity," meaning it is not "indeterminate, too subjective, inchoate, and variable," and it also must have "social distinction," meaning it is "perceived as a group by society." Id. at 990-91 (alteration and quotation omitted).

Hernandez's proposed group is "Mexican men who have been deported who are portrayed to be wealthy because they come from America." The IJ concluded that this proposed group lacked all three elements—immutable characteristics, particularity, and social distinction—but we need only consider the last. See Rodas-Orellana, 780 F.3d at 991 n.10 (declining to address other elements where lack of social distinction was dispositive). There is no evidence in this record that Hernandez's proposed social group would be perceived as a group in Mexican society. He merely testified that people or the cartels might think he is wealthy because he had an accent and had spent a significant amount of time in the United States. But this testimony only suggests he would receive

---

[4] Hernandez contends that neither the IJ nor the BIA engaged in a sufficiently detailed discussion regarding whether his alleged group was cognizable. But the agency's explanation is sufficient to enable our review and demonstrate that it properly considered the issue. See Ritonga, 633 F.3d at 975.

8

as much negative attention as anyone else who might be targeted for his or her perceived wealth.  See Rivera-Barrientos v. Holder, 666 F.3d 641, 651 (10th Cir. 2012) ("Where it appears these individuals suffer no more negative attention than the general public, this suggests that the persecutors themselves, and likely society generally, do not perceive this portion of the population as set apart.").  The IJ correctly determined that Hernandez failed to articulate a cognizable social group.

## IV

Finally, we consider the BIA's conclusion that Hernandez was not entitled to CAT protection.  To obtain CAT protection, an applicant "must demonstrate it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Ritonga, 633 F.3d at 978 (quotation omitted).  An applicant need not show the torture would occur on account of a statutorily protected ground, but he or she must show the torture would be "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  Id. (quotation omitted).

Hernandez contends "it is extremely likely [he] will be beaten and tortured, or even killed, if forced to return to Mexico."  But as the BIA observed, he has never been harmed or threatened in Mexico.  Although he testified that his friend was harmed, there is no evidence that Hernandez himself would be specifically targeted for torture.  Moreover, the BIA recognized he did not express any fear of torture by Mexican officials, nor had he shown that any extortion attempts would be made by, at the instigation of, or with the consent or acquiescence of any public official in Mexico.  We conclude the BIA's decision is supported by substantial evidence.

9

## V

For the foregoing reasons, we **DENY** the petition for review.

Entered for the Court


Carlos F. Lucero
Circuit Judge