**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 19, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SHER B. CHHETRI,

     Petitioner,

v.

JEFFREY A. ROSEN, Acting United
States Attorney General,[*]

     Respondent.

No. 19-9502
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **PHILLIPS**, **McHUGH**, and **EID**, Circuit Judges.
_____

Sher B. Chhetri, a native and citizen of Nepal, petitions for review of the Board of

Immigration Appeals' (BIA) denial of his applications for asylum, restriction on removal,

and protection under the Convention Against Torture (CAT). We deny the petition for

review.

---

[*] On December 24, 2020, Jeffrey A. Rosen became Acting Attorney General of
the United States. Consequently, he has been substituted for William P. Barr as
Respondent. *See* Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Mr. Chhetri entered the United States on August 14, 2015. At an initial interview, an immigration official determined he had a credible fear of returning to Nepal and issued him a Notice to Appear (NTA) before an immigration judge (IJ). The NTA charged Mr. Chhetri with attempting to enter the U.S. without valid entry documents. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). Mr. Chhetri conceded the charge but applied for asylum, restriction on removal, and CAT protection based on his political opinion.

Before the IJ, Mr. Chhetri testified that he was an active member of the Nepali Congress Party (NCP) for ten years. He stated that he attended NCP meetings, oversaw its programs, assisted with its campaign efforts, and spoke about its development initiatives. He testified, however, that he received several threats from the opposition Maoist Party. The first threat was from an anonymous caller who instructed Mr. Chhetri's father to tell him to join the Maoists. After the call, Mr. Chhetri left home and stayed with a friend. When he returned the next day, his father told him the Maoists had come to their home wearing scarves on their faces, looking for him. Mr. Chhetri became afraid, so he moved to Kathmandu, where he thought he would be more secure.

But in Kathmandu, Mr. Chhetri received a second threat from another anonymous caller. This caller told him the Maoists had repeatedly instructed both him and his father to join the Maoist party, but they insisted on supporting the NCP. The caller said when the Maoists found him, they would kill him.

Mr. Chhetri changed his telephone number but doing so did not stop the threats. Mr. Chhetri testified that at some point, a third caller told him the Maoists were at his

residence and he should open the door.  This made him afraid, so he turned off the lights and put down the phone, but no one came to his door.  After this incident, he decided to relocate again.

Mr. Chhetri moved to a place called Manmaiju, where he received a fourth telephone threat.  This time, the caller told him that even though he was running from one place to another, the Maoists would find and kill him.  Mr. Chhetri's landlord overheard the call and forced him to leave.  Mr. Chhetri moved yet again, staying with a friend in a town called Banianyatar.  There, his previous landlord contacted him and informed him that the Maoists had come to his residence and were making problems.  The landlord told Mr. Chhetri that if he discovered his whereabouts, he would report him to the Maoists.

Mr. Chhetri testified that at that point, he realized it would be difficult to survive in Nepal.  He explained that the Maoists were spread throughout the country and they had threatened his father on four other occasions.  He therefore fled Nepal and subsequently learned the Maoists continued to ask his father and his wife about him.  He testified that he feared he would be killed if he were forced to return to Nepal.  He further stated he did not contact the police after any of these incidents because he did not know the telephone number for the police, nor did he have any proof that these threats were made.  He also suggested the police would not help him because the Maoists are part of the government.

After considering this and other evidence, the IJ denied relief.  The IJ determined that Mr. Chhetri was credible, but that several anonymous telephone threats and one visit to his father over the course of eight years was insufficient to show past persecution or a well-founded fear of future persecution.  Moreover, noting Mr. Chhetri's testimony that

3

he declined to contact the police, the IJ ruled there was insufficient evidence to indicate the Nepali government was unable or unwilling to protect him, adding that while there was evidence of some general political violence in Nepal, the political parties had co-existed peacefully since 2006 and 2007, especially in the Kathmandu area. Finally, the IJ determined there was insufficient evidence the Nepali government would torture him or acquiesce to his torture. The IJ thus ordered Mr. Chhetri removed to Nepal.

The BIA affirmed, ruling that Mr. Chhetri's receipt of a limited number of anonymous threats, mostly via telephone over a period of years, did not amount to persecution. The BIA acknowledged the Maoists' behavior was distressing, but it ruled that Mr. Chhetri was never physically harmed and all of his problems consisted entirely of threats. Moreover, the BIA found no clear error in the IJ's conclusion that Mr. Chhetri failed to show a well-founded fear of persecution. Last, the BIA ruled that the IJ did not clearly err in finding that he failed to show it was more likely than not that he would be tortured upon removal.

## II

We review legal questions de novo and agency factual findings for substantial evidence. *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013). "'[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). "Our review is confined to the reasoning given by the agency, and we will not independently search the record for alternative bases to affirm." *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011) (brackets and internal quotation marks omitted).

4

To obtain asylum, an alien must show he "'is unable or unwilling to return to [his country of nationality] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (quoting 8 U.S.C. § 1101(a)(42)(A)). There is a rebuttable presumption that an alien who suffered past persecution has a well-founded fear of future persecution. *See id.* at 1335-36 (citing 8 C.F.R. § 1208.13(b)(1)). Absent this presumption, "[a]liens basing their asylum claims upon a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Karki*, 715 F.3d at 801 (internal quotation marks omitted). "Such persecution may be inflicted by the government itself or by a non-governmental group that the government is unwilling or unable to control." *Hayrapetyan*, 534 F.3d at 1337 (internal quotation marks omitted).

"The test for restriction on removal is . . . more demanding than the 'well-founded fear' standard applicable to an asylum claim." *Ritonga*, 633 F.3d at 978 (internal quotation marks omitted). To obtain restriction on removal, an alien must show his "life or freedom would be threatened in the country proposed for removal because of" a statutorily protected ground. *Id.* (brackets and internal quotation marks omitted). The alien must show either that he suffered past persecution or that "it is more likely than not that he . . . would be persecuted on one of the specified grounds upon returning to the proposed country of removal." *Id.* (internal quotation marks omitted).

5

An alien seeking CAT protection "must demonstrate it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." *Id.* (internal quotation marks omitted). He need not show torture on account of a statutorily protected ground, but he must show the torture would be "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* (internal quotation marks omitted).

Mr. Chhetri contends he was persecuted in Nepal and the death threats he received indicate he is likely to be tortured if returned there. But our cases do not support his contention. "[P]ersecution requires the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Hayrapetyan*, 534 F.3d at 1337 (internal quotation marks omitted). "Mere denigration, harassment, and threats" do not constitute persecution. *Pang v. Holder*, 665 F.3d 1226, 1231 (10th Cir. 2012) (internal quotation marks omitted). Mr. Chhetri's experiences—four telephone threats and one vague, in-person threat made to his father—do not constitute persecution. *Compare Ritonga*, 633 F.3d at 976 (holding record did not compel finding persecution where, in addition to general violence and unrest, alien sustained minor injuries during a home invasion, the police investigated the crime and apprehended its perpetrators, and the alien was separately attacked in her car but suffered no injuries), *and Sidabutar v. Gonzales*, 503 F.3d 1116, 1124 (10th Cir. 2007) (agreeing with BIA's conclusion that alien was not persecuted where he was repeatedly beaten on account of his religion, twice resulting in serious injury; he was repeatedly confronted by people who demanded

6

money; and once, when he had no money to give, he was struck and his motorcycle was burned), *with Karki*, 715 F.3d at 797-98, 804-05 (holding record compelled finding persecution where, in addition to receiving threats, the alien's aunt was killed in a house bombing, he was the target of a lethal car bombing that killed five of his colleagues, his real property was confiscated, and he was hospitalized by a severe beating that rendered him semi-unconscious), *and Hayrapetyan*, 534 F.3d at 1333-34, 1337-38 (concluding there was sufficient evidence of persecution where, in addition to being threatened, the alien was imprisoned on two occasions, slapped, knocked to the ground, kicked, and injured when nearly run over by a vehicle; her husband was severely beaten twice, one time requiring a fifteen-day hospitalization; her daughter was nearly abducted; and she was fired from her job).

Because Mr. Chhetri did not suffer past persecution, he was not entitled to a presumption that he has a well-founded fear of persecution. Nonetheless, he could still show an objectively well-founded fear of persecution with evidence that he will be singled out for persecution in the future. *See Ritonga*, 633 F.3d at 976. But if he could avoid persecution by relocating to another part of the county, and it would be reasonable to do so, his fear of persecution is not well-founded. *See id.* at 976-77.

Mr. Chhetri seems to contend he will be singled out for persecution because there is evidence the Maoists will find him no matter where he goes in Nepal. He points out that they contacted him in various locations and warned him they would find him and kill him, regardless of where he relocated. He says the IJ failed to consider this evidence or make any findings concerning whether he had well-founded fear of persecution, relying

7

instead exclusively on his failure to show past persecution. Consequently, he contends the BIA erred in affirming the IJ's determination that he did not show a well-founded fear of persecution.

The record does not support Mr. Chhetri's arguments. After finding that he failed to show past persecution, and therefore was not entitled to a rebuttable presumption of a well-founded fear of future persecution, the IJ determined that Mr. Chhetri also failed to show, independently, a well-founded fear of persecution. *See* Admin. R. at 60-61. The IJ reasoned that Mr. Chhetri might experience threats similar to those previously made against him, but this was insufficient to satisfy his burden of proof. The IJ also explained that there was insufficient evidence that the government was unable or unwilling to protect him, particularly given that Mr. Chhetri declined to contact the police. The IJ added that although there was evidence of some continuing political violence, the various political parties in Nepal have peacefully coexisted since 2006 and 2007, especially in the Kathmandu area. These findings adequately support the IJ's determination that Mr. Chhetri did not show a well-founded fear of persecution. *See Ritonga*, 633 F.3d at 977 (holding that IJ adequately supported his determination that alien lacked a well-founded fear of persecution by referencing facts in evidence and announcing decision in terms sufficient to permit review); *see also Ismaiel v. Mukasey*, 516 F.3d 1198, 1207 (10th Cir. 2008) (recognizing the agency need not "write an exegesis on every contention" (internal quotation marks omitted)).

To the extent Mr. Chhetri asserts there is no evidence "that the government of Nepal is able to protect [him]," Pet'r Br. at 17, it was his burden to establish his eligibility

8

for asylum by showing, among other things, that the government of Nepal could *not* protect him, *see Pang*, 665 F.3d at 1230 ("The applicant bears the burden of proof of establishing eligibility for asylum."); 8 C.F.R. § 1208.13(a).[1]  As the BIA explained, Mr. Chhetri offered "no persuasive argument that the information contained in the background evidence establishes clear error in the [IJ's] predictive findings of fact." Admin. R. at 4.  The BIA therefore affirmed the IJ's conclusion that Mr. Chhetri did not meet his burden to establish his eligibility for asylum.  Mr. Chhetri fails to show that any reasonable adjudicator would be compelled to reach a contrary conclusion.

Mr. Chhetri's "failure to satisfy the burden of proof for asylum necessarily constitutes a failure to meet the more stringent burden of proof for restriction on removal." *Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) (ellipsis and internal quotation marks omitted).  He also failed to establish that he is likely to be tortured if removed to Nepal.  Indeed, the BIA ruled that Mr. Chhetri's "[CAT] claim is based on a speculative chain of assumptions and a fear of what might happen, rather than on evidence that meets his burden of demonstrating that it is more likely than not he will be subjected to torture."  Admin. R. at 5.  In his petition for review, Mr. Chhetri cites no

---

[1] To support this argument, Mr. Chhetri relies in part on new evidence submitted to the BIA that indicated the Maoists were successful in the 2017 Nepali elections.  He argued to the BIA that this new evidence demonstrated the government could not protect him.  But this evidence was not before the IJ.  And the BIA determined that Mr. Chhetri "ha[d] not made a persuasive argument that, if the record were remanded to consider in the first instance the new background evidence (regarding events that occurred after the date of his hearing), the result of the proceedings would change."  Admin. R. at 4-5.  The BIA therefore denied Mr. Chhetri's motion for remand, and Mr. Chhetri does not challenge that ruling.

record evidence to support his contention that he is likely to be tortured if removed to Nepal; instead, he relies again on speculation. *See* Pet'r Br. at 21 (arguing that the Maoists threatened his life and "death would certainly constitute torture"). Accordingly, we see no error in the denial of Mr. Chhetri's CAT claim.

III

The petition for review is denied.

Entered for the Court

Allison H. Eid
Circuit Judge