FILED
United States Court of Appeals
Tenth Circuit

April 6, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

SANTOSH SHARMA,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,[*]

    Respondent.

No. 20-9554
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]

_____

Before **PHILLIPS**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

Santosh Sharma, a native and citizen of Nepal, applied for asylum,

withholding of removal, and relief under the Convention Against Torture (CAT)

based on his political opinion. The Board of Immigration Appeals (Board or BIA)

affirmed the immigration judge's denial of relief, and Sharma now petitions for

---

[*] On March 11, 2021, Merrick B. Garland became Attorney General of the United States. Consequently, his name has been substituted for William P. Barr as Respondent, per Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

review of the Board's decision.  Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition for review.

## BACKGROUND

Sharma joined the Nepali Congress Party in March 2017.  On November 19, 2017, just before an election, he was approached by members of the Young Communist League (YCL), the youth arm of the Communist Party of Nepal (the Maoists).  They asked him to leave the Nepali Congress Party and campaign for the Maoists.  He did not do so, and a few days later, on November 23, the YCL members returned and punched, kicked, and beat him with sticks.  He suffered cuts on his arm and hands, but he did not lose consciousness or seek medical attention other than treatment by a health assistant at home.  He did not report this incident to authorities.  Instead, he moved to his aunt's house, several hours away from his parents' village.

Nearly a year later, on November 12, 2018, Sharma was beaten by a different group of YCL members.  They told him "you can't hide from us.  Anywhere you go, we will find you.  You can't be safe anywhere."  Admin. R. Vol. 1 at 119 (internal quotation marks omitted).  One person hit him in the back with a helmet, causing him to fall down, and then the group punched and kicked him.  He suffered redness and swelling, but "did not have wounds" and "managed to run away."  *Id.* at 120.  He again did not seek medical attention or report the incident to authorities.  He hid at a neighbor's home for two days and then fled to Delhi, India.

After traveling through numerous countries, Sharma entered the United States and applied for asylum, withholding of removal, and protection under the CAT.  The

immigration judge found Sharma not fully credible. He denied asylum and withholding of removal on the grounds that the beatings were not severe enough to amount to past persecution, and that Sharma had not established a well-founded fear of future persecution because he could relocate within Nepal, to the metropolitan area of Kathmandu. The immigration judge denied the CAT claim because Sharma did not demonstrate it was more likely than not that he would be subjected to torture should he be returned to Nepal.

On appeal, the Board assumed that Sharma testified credibly but nevertheless upheld the immigration judge's decision. Regarding asylum, the Board stated that "[e]ven when considered cumulatively, [the] two beatings do not rise to the level of persecution." *Id*. at 4. It further noted that while "physical harm is not the only means by which persecution may be established, [Sharma] has not alleged on appeal that anything else occurred that may be considered in determining the past persecution analysis." *Id*. Rejecting Sharma's assertion that the YCL is a government-sponsored group, the Board also held that the immigration judge did not clearly err in finding that Sharma could avoid future harm by relocating within Nepal and that such relocation would be reasonable. Because he did not establish past persecution or a well-founded fear of future persecution, the Board rejected not only his asylum claims, but also his withholding of removal and CAT claims. The Board therefore dismissed his appeal.

Sharma now petitions for review of the Board's decision.

3

## DISCUSSION

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012). Under the substantial-evidence standard, "[t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)).

## I.      Asylum Claim

To succeed with his asylum claim, Sharma must establish that he is a refugee. *See* 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is "unable or unwilling to return to the country of origin because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Rivera-Barrientos*, 666 F.3d at 645-46 (emphasis and internal quotation marks omitted). "Persecution is the infliction of suffering or harm upon those who differ . . . in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) (internal quotation marks omitted). "[P]ersecution may be inflicted by the government itself, or by a non-governmental group that the government is unwilling or unable to control." *Id.* (internal quotation marks omitted).

"In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not

4

in dispute and the only issue is whether those circumstances qualify as persecution." *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1231 (10th Cir. 2012) (internal quotation marks omitted). "The BIA's determination that an applicant was not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015) (brackets and internal quotation marks omitted). Applying these principles, this court has upheld findings of no past persecution even though the petitioner suffered some physical injury in attacks or assaults on account of a protected ground. *See, e.g.*, *Sidabutar v. Gonzales*, 503 F.3d 1116, 1124 (10th Cir. 2007); *Tulengkey v. Gonzales*, 425 F.3d 1277, 1280-81 (10th Cir. 2005); *Kapcia v. INS*, 944 F.2d 702, 704, 708 (10th Cir. 1991).

Sharma's opening brief does not address whether his physical injuries from the attacks establish past persecution. Rather, he asserts that "[a]s the Board acknowledged, there is no requirement of significant physical harm to satisfy the definition of persecution. Here, the Maoists not only beat the Petitioner, they threatened him in a way that menaced him, and made him afraid of even worse attacks." Opening Br. at 17. But Sharma never argued before the Board that the YCL's threats constituted past persecution, either alone or together with his physical injuries. To the contrary, the Board observed that Sharma did not "allege[] on appeal that anything else [beyond physical harm] occurred that may be considered in determining the past persecution analysis." Admin R. Vol. 1 at 4.

5

A petitioner must exhaust arguments before the Board before this court can consider them. *See* 8 U.S.C. § 1252(d)(1). "It is not enough to go through the procedural motions of a BIA appeal, or to make general statements in the notice of appeal to the BIA, or to level broad assertions in a filing before the Board. To satisfy § 1252(d)(1), an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) (citation and internal quotation marks omitted). Although Sharma mentioned the threats in his filings, he never explicitly argued before the Board that the threats supported a finding of past persecution. He therefore failed to exhaust this argument. *See Birhanu v. Wilkinson*, __ F.3d __, 2021 WL 868499, at *4 (10th Cir. Mar. 9, 2021) (holding that noncitizen's two citations to a statute, "without specifically explaining why [the statute] entitles him to relief, did not fairly present his legal theory to the BIA"). We dismiss this portion of the petition. *See id.*

Sharma asserts that "[t]he people who attacked [him] were Maoists, and members of a political party that now governs Nepal." Opening Br. at 17. But the Board explicitly rejected his proposition that the YCL members who attacked him could be considered part of the government: "the fact that the YCL supported the political party that is now in power does not convert the youth group, particularly its violent tendencies, into a government-sponsored group." Admin. R. Vol. 1 at 4. Sharma's conclusory assertions fail to establish that the Board's determination is legally erroneous or unsupported by substantial evidence.

6

Sharma further asserts that "the Board never considered whether the Maoist-dominated government was unwilling or unable to control the Maoist group that harmed [him]." Opening Br. at 17. This assertion is incorrect, however, because the Board did state "that country conditions evidence indicates that government officials are taking steps to prevent politically-motivated violence." Admin. R. Vol. 1 at 4; *see also id.* at 5 (noting that "[t]he Immigration Judge concluded that [Sharma] had not demonstrated that the Nepali government was unable or unwilling to protect [him] from the YCL members, which is a higher standard than that required for [CAT] protection"). And to the extent Sharma intended this statement as a challenge to the Board's determination that the government of Nepal is not unwilling or unable to control the YCL, his conclusory assertion fails to establish that the decision was legally erroneous or unsupported by substantial evidence.

After rejecting Sharma's argument that the YCL is a government-sponsored group, the Board moved on to consider the issue of relocation. *See Tulengkey*, 425 F.3d at 1281 (recognizing that an applicant does not have a well-founded fear of future persecution if he can reasonably relocate within his country, and that the burden of showing that relocation is unreasonable falls on the applicant when the alleged persecutor is not the government or a government-sponsored group). It affirmed the immigration judge's determination that Sharma could avoid harm through relocation within Nepal and that relocation is reasonable. Sharma's opening brief does not challenge this holding. Accordingly, his "claim of a well-founded fear of future persecution necessarily fails." *Id.* at 1282.

## II.     Withholding of Removal

"The showing required for withholding of removal is more stringent tha[n] the showing required for asylum." *Zhi Wei Pang*, 665 F.3d at 1233. "To be eligible for withholding of removal, an applicant must demonstrate that there is a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion." *Id.* (internal quotation marks omitted). If an applicant "fails to satisfy the lower burden of proof required for asylum, he also fails to satisfy the higher standard of eligibility for withholding of removal." *Id.* at 1234. Sharma's failure to show persecution with regard to his asylum claim necessarily means that his withholding of removal claim fails as well.

## III.     CAT Relief

"To be eligible for relief under the CAT, an individual must establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* at 1233-34 (internal quotation marks omitted). For purposes of the CAT, "torture" is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted" for certain purposes "by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

With regard to his CAT claim, Sharma states that "[f]or similar reasons" as his asylum and withholding claims, he "has established a likelihood that he will be tortured in violation of Article 3 of the CAT if he is returned to Nepal." Opening Br.

8

at 19-20.  Having rejected Sharma's asylum and withholding claims, we reject his CAT claim as well.  *See Sidabutar*, 503 F.3d at 1125-26.  On this record, no reasonable adjudicator would be compelled to conclude that it is more likely than not that Sharma would be tortured if he is returned to Nepal.

## CONCLUSION

The petition for review is dismissed in part and denied in part.

Entered for the Court

Joel M. Carson III
Circuit Judge