**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**June 6, 2025**

_____

**Christopher M. Wolpert**
**Clerk of Court**

DIANA FERNANDA ANGARITA-
QUEZADA, and her minor children Jane
Doe and John Doe,

      Petitioner,

v.

PAMELA BONDI, United States Attorney
General,[*]

      Respondent.

No. 24-9555
(Petition for Review)

_____

### ORDER AND JUDGMENT[**]

_____

Before **McHUGH**, **BALDOCK**, and **EID**, Circuit Judges.

_____

---

[*] On February 5, 2025, Pamela Bondi became Attorney General of the United
States.  Consequently, her name has been substituted as Respondent, per Fed. R. App. P.
43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Diana Fernanda Angarita-Quezada[1] petitions for review of the Board of Immigration Appeals ("BIA") decision affirming the immigration judge's ("IJ") denial of her applications for relief from removal. Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny her petition for review.

## I.  BACKGROUND

### A.  Underlying Facts

Petitioner is a native and citizen of Colombia who entered the United States without being admitted or paroled in February 2022. She was then placed in removal proceedings, and the IJ found her removable. Seeking relief from removal, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Before the IJ, Petitioner testified that she is a lesbian who was married to a woman in Colombia.[2] She has two children, a teenage girl and an elementary-age boy, with her ex-husband. After Petitioner revealed her sexuality, her mother threatened to take away her children and her ex-husband threatened to kill her wife. After some time, Petitioner's relationship with her mother improved.

Petitioner, her wife, and her children lived in a small town in Colombia. While living there, they all experienced discrimination and mistreatment because

---

[1] Ms. Angarita-Quezada's minor daughter and son are derivative beneficiaries of her asylum application. They present no claims or arguments distinct from hers.

[2] Petitioner's wife was included in the proceedings before the agency, however the petition for review does not include her wife, and Petitioner's opening brief refers to her wife as "her now former partner." Opening Br. at 3.

Petitioner and her wife are lesbians. The family was refused entry at a local restaurant. Petitioner's daughter was rejected by her classmates, which took a toll on her mental health. The other children in the neighborhood refused to play with Petitioner's son and called him names. Petitioner and her wife sought help from the local police a few times, but the police never followed up or filed a report. She believes the police did not help her because they did not respect her marriage or her sexual orientation.

After one incident with neighborhood kids that made her son run home crying, Petitioner confronted her neighbors about the mistreatment. In response, the neighbors threatened to kill her family if they did not leave. Petitioner took the threat seriously and decided that her family needed to leave Colombia. She and her wife first considered moving their family to a city but decided against it because Colombian cities have high murder rates.

After they came to the United States, Petitioner's son disclosed that he was sexually assaulted by a teacher in Colombia. Petitioner contacted a Colombian attorney about the abuse and the attorney helped her file a report with Colombian police. She fears that if her family returns to Colombia they will not only face discrimination and further mistreatment from neighbors due to her sexual orientation, but that the teacher she is accusing of sexually assaulting her son may seek revenge against her and her children. Petitioner and her children would return to their small town if removed from the United States because her mother and sister live there, and she feels it would be safer there than in a city.

3

**B. Legal Standards**

To receive asylum, an applicant must be a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is a person who is unable or unwilling to return to—and unable or unwilling to avail herself of the protection of—her country because of past persecution or a well-founded fear of persecution *on account of* any of five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. *Id.* § 1101(a)(42)(A); *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015).

"Persecution is the infliction of suffering or harm upon those who differ [on protected grounds] in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) (internal quotation marks omitted). Where, as here, an applicant's claim is based on membership in a particular social group, she must show that the group (1) shares "a common, immutable characteristic . . . beyond the power of an individual to change," (2) is defined with "particularity," and (3) is socially distinct, meaning it is "*perceived* as a group by society." *Rodas-Orellana*, 780 F.3d at 990–91 (internal quotation marks omitted).

To qualify for withholding of removal, an applicant must show "a clear probability of persecution on account of a protected ground." *Id.* at 987 (internal quotation marks omitted). This burden of proof is higher than the burden for asylum. *Id.* at 986.

4

To receive protection under the CAT, an applicant must establish that if she is returned to her country, it is more likely than not that she would be tortured, *see* 8 C.F.R. § 1208.16(c)(2), "by, or at the instigation of, or with the consent or acquiescence of, a public official," *id.* § 1208.18(a)(1). Unlike asylum or withholding of removal, a CAT claim does not require the applicant to show a nexus between the harm and a protected ground. *Ritonga*, 633 F.3d at 978.

## C. Agency Proceedings

Petitioner rested her asylum and withholding of removal claims on her political opinion and her membership in three proposed social groups: (1) "homosexual women in Colombia," (2) "people who have filed police reports against persecutors," and (3) "known witnesses." R. vol. I at 56.

The IJ determined Petitioner's first proposed social group was cognizable but that her other proposed groups were not because they lacked particularity and social distinction. The IJ also found there was no evidence that Petitioner was harmed on account of an actual or imputed political opinion and that the harm Petitioner endured in Colombia did not rise to the level of persecution. The IJ further found Petitioner failed to demonstrate a well-founded fear of future persecution because she could reasonably relocate and there was insufficient evidence that the Colombian government would be unable or unwilling to protect her from future harm.

Having found Petitioner had failed to meet her burden for asylum, the IJ concluded that she necessarily failed to meet the higher burden for withholding of removal. The IJ also denied Petitioner's request for CAT protection, finding she

5

failed to show it was more likely than not that she would be tortured with the acquiescence of government officials upon her removal to Colombia.

The BIA upheld the IJ's decision. She timely petitioned this court for review.

## II. DISCUSSION

### A. Standards of Review

Where, as here, a single BIA member issues a brief order affirming an IJ's decision, we review both the BIA order and any parts of the IJ's decision it relied on. *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). We review legal conclusions de novo and findings of fact for substantial evidence. *Id.* Under the substantial-evidence standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### B. Asylum

Petitioner raises three challenges to the agency's asylum determination. First, she argues the BIA erred in upholding the IJ's finding that she failed to establish past persecution. Whether an applicant has demonstrated persecution is a question of fact that we review for substantial evidence. *Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1231 (10th Cir. 2012). The BIA determined that the threats Petitioner received "were not sufficiently concrete or menacing" and the aggregate harm in this case did not rise to the level of persecution. R. vol. I at 4. After carefully examining the record, we cannot say that it compels the conclusion that Petitioner was persecuted in Colombia. *See Zhi Wei Pang*, 665 F.3d at 1231 ("Mere denigration, harassment, and

6

threats are insufficient.") (internal quotation marks omitted); *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003) ("Threats alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution.").

Second, Petitioner argues the BIA erred in upholding the IJ's finding that she failed to show the Colombian government's inability or unwillingness to control her persecutors. We review for substantial evidence whether an applicant has satisfied the unable-or-unwilling standard. *See Singh v. Bondi*, 130 F.4th 848, 863 (10th Cir. 2025). In employing this standard of review, we do not reweigh the evidence. *See Yuk v. Ashcroft*, 355 F.3d 1222, 1236 (10th Cir. 2004). As the BIA noted, the record shows that although Colombia struggles with violence against members of the LGBTQ community, its government is making efforts to address the issue. Colombia's laws permit same-sex marriage and prohibit discrimination based on sexual orientation. Substantial evidence supports the agency's finding.

Third, Petitioner argues the BIA should have explicitly addressed her political opinion claim, the cognizability of her proposed social groups, and whether she established a nexus between the harm she underwent and a protected ground. We reject this argument. The BIA did not need to consider every ground the IJ relied upon in its order denying relief. *INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

And "[w]e are limited to judging the propriety of the [BIA]'s rulings solely by the grounds invoked by the agency." *Berdiev v. Garland*, 13 F.4th 1125, 1136 (10th Cir. 2021) (internal quotation marks omitted).

## C.  Withholding of Removal

Petitioner's failure to satisfy the burden of proof for asylum necessarily precludes her from meeting the higher standard for withholding of removal. *Rodas-Orellana*, 780 F.3d at 987.

## D.  The Convention Against Torture

Petitioner seems to argue that the agency's CAT analysis did not contextualize country conditions evidence with her credible testimony about her lived experience in Colombia.  We disagree.  The IJ analyzed the evidence and fully explained her reasons for denying Petitioner's request for protection under the CAT.  The BIA agreed with and adopted the IJ's analysis.  Having carefully reviewed Petitioner's argument, we discern no reversible error.

## E.  Unexhausted Argument

Finally, Petitioner argues her children "may be eligible for special immigrant juvenile status."  Opening Br. at 29.  The government correctly objects that Petitioner's claim has not been exhausted because she did not raise it before the BIA. *See Miguel-Pena v. Garland*, 94 F.4th 1145, 1155 (10th Cir.), *cert. denied*, ___ S. Ct. ___, 2024 WL 4743083 (U.S. Nov. 12, 2024) (No. 24-12) (explaining "that issue exhaustion is a mandatory claim-processing rule that should be enforced where a

party timely and properly objects") (brackets, ellipsis, and internal quotation marks omitted).

### III.  CONCLUSION

We deny the petition for review.  We grant Petitioner's motion to proceed in forma pauperis.

Entered for the Court


Carolyn B. McHugh
Circuit Judge